Morris Int'l, Inc. v. Packer, 2021 NCBC 13.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

MORRIS INTERNATIONAL, INC.,

Plaintiff,

v.

ANTHONY WILLIAM PACKER; PACKER INVESTMENT COMPANY, INC.; PA&K, LLC; OLDE BEAU GENERAL PARTNERSHIP; KPP, LLC; KENNINGTON INVESTMENT COMPANY, INC.; BARRY POOLE; LAURA POOLE; SHERRI KENNINGTON FAGAN; KRISTI KENNINGTON HALL; and KATHY KENNINGTON DAVIS,

Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
20 CVS 2156

**ORDER AND OPINION ON DEFENDANTS ANTHONY WILLIAM PACKER, PACKER INVESTMENT COMPANY, INC., PA&K, LLC, OLDE BEAU GENERAL PARTNERSHIP, and KPP, LLC's MOTION FOR JUDGMENT ON THE PLEADINGS AND DEFENDANTS SHERRI KENNINGTON FAGAN, KRISTI KENNINGTON HALL, KATHY KENNINGTON DAVIS, and KENNINGTON INVESTMENT COMPANY, INC.'s SECOND MOTION FOR JUDGMENT ON THE PLEADINGS**

THIS MATTER is before the Court on Defendants Anthony William Packer ("Packer"), Packer Investment Company, Inc. ("PIC"), PA&K, LLC ("PA&K"), Olde Beau General Partnership ("OBGP"), and KPP, LLC's ("KPP"; collectively Packer, PIC, OBGP, and KPP are "Packer Defendants") Motion for Judgment on the Pleadings ("Packer Defendants' Motion," ECF No. 74) and Defendants Sherri Kennington Fagan ("Fagan"), Kristi Kennington Hall ("Hall"), Kathy Kennington Davis ("Davis"), and Kennington Investment Company, Inc.'s ("KIC") Second Motion for Judgment on the Pleadings ("KIC Motion," ECF No. 67; collectively,Packer Defendants' Motion and the KIC Motion are referred to as the "Motions").

THE COURT, having considered the Motions, the briefs filed in support of and in opposition to the Motions, the arguments of counsel at the hearing on the Motions,

the applicable law, and other appropriate matters of record, CONCLUDES that the Motions should be GRANTED, in part, and DENIED, in part, for the reasons set forth below.

*Morris Law Firm, PLLC, by Bradley C. Morris, for Plaintiff Morris International, Inc.*

*Jerry Meek, Attorney at Law, PLLC, by Gerald F. Meek, for Defendants Barry Poole and Laura Poole.*

*James, McElroy & Diehl, P.A., by Fred B. Monroe, for Defendants Sherri Kennington Fagan, Kristi Kennington Hall, Kathy Kennington Davis, and Kennington Investment Company, Inc.*

*Vann Law Firm, P.A., by Christopher M. Vann, for Defendants Anthony William Packer, Packer Investment Company, Inc., PA&K, LLC, Olde Beau General Partnership, and KPP, LLC.*

McGuire, Judge.

I.      FACTS

1.      The facts relevant to the determination of the Motions are drawn from the Amended Complaint.  ("Amended Complaint," ECF No. 4.)

2.      This matter arises from the development of property in the Olde Beau Subdivision in Alleghany County, North Carolina.  The Olde Beau Golf and Country Club is part of the Olde Beau Subdivision.  The Olde Beau Subdivision was created in 1992, but by 2015, "much of its available property . . . [was] still vacant for years after initial development."  (Amended Complaint, ECF No. 4, at ¶ 13.)

3.      The Olde Beau Subdivision property was owned by OBGP.  (*Id*. at ¶ 4.) The General Partners in OBGP are PIC and KIC.  (*Id*. at ¶¶ 5–6.)  Packer is the

President of PIC. (*Id*. at ¶ 5.) Plaintiff alleges, on information and belief, that KIC is "controlled by Defendant Sherri Kensington Fagan." (*Id*. at ¶ 6.)

4.     Packer is also a member of PA&K. PA&K is in the business of developing residential properties and was involved in developing, managing, constructing, and selling property in the Olde Beau Subdivision. (*Id*. at ¶ 3.) In March 2015, Packer, on behalf of PA&K and OBGP, contacted Plaintiff Morris International, Inc. ("Plaintiff"), which specializes in the development and marketing of real estate, to discuss Plaintiff's potential assistance in developing and marketing the vacant real property at Olde Beau Subdivision. Specifically, PA&K and OBGP contemplated creating a luxury RV resort, whereby a portion of the Olde Beau Subdivision would be developed for sales of individual lots to be owned and used by owners of luxury motorhome coaches, with improvements, appropriate amenities and golf club memberships. (*Id*. at ¶ 14.)

5.     In April 2015, Packer, "on behalf of PA&K and OBGP," met with Plaintiff, including its representative Sid Morris ("Morris"), to discuss the project. Packer "personally and directly represented to Plaintiff's representatives . . . that Packer was acting on behalf of and with the full authority of his partners to enter a venture with [Plaintiff] to pursue" the project. (*Id*. at ¶ 17.)

6.     On May 20, 2015, Plaintiff and PA&K executed a document titled "Agreement with PA&K, LLC and Morris International, Inc. Olde Beau Golf and

Country Club Development Project" ("Agreement").  (*Id*. at ¶ 18, Ex. B at pp. 3–4.)[1]

The Agreement provided as follows:

> This agreement with PA&K, LLC. (PAK) and Morris International, Inc. (MI) represents the working relationship agreed by parties for moving forward with the development of properties and infrastructure at the Olde Beau Golf and Country Club site in Roaring Gap, NC.
>
> PAK and MI have agreed to the following:
>
> All budgeted items will be mutually approved by PAK and MI prior to implementation.
>
> Regarding the development of a luxury RV Resort:
>
> > Sales shall mean net sales after all costs.
>
> Sales of the first $6MM will be split on a 50/50% basis by PAK and MI
>
> All sales after the first $6MM will be split 70% MI and 30% PAK
>
> > All amenities sold will be split 70% MI and 30% PAK
>
> Every purchaser of such property will be required to join the golf club.
>
> All current interior roads are owned and will be maintained by the Olde Beau HOA.
>
> Regarding the development of The NOAH Project:
>
> Sales shall mean net sales after an costs.
>
> Sales shall be split on a 50/50% basis by PAK and MI unless the $6MM threshold has been met. Then the split will be 70% MI and 30% PAK.
>
> Regarding the development of any existing Olde Beau Property:

---

[1] In the Amended Complaint, Plaintiff misidentifies the Agreement as Exhibit A.

> This includes homes and sites, town homes and sites, condos and sites and any other sale on the premises.
>
> Sales shall mean net sales after all costs.
>
> Sales shall be split on a 50/50% basis by PAK and MI.
>
> Raw land sales will be split 70% PAK and 30% MI
>
> Outside developer participating in the cost of the project shall be paid from proceeds first.
>
> PAK will provide all land to be developed as part of their ongoing contribution and serve as liaison to the existing Olde Beau community.
>
> MI will provide the management for marketing, advertising, promotion, creative and sales as part of their contribution.

(*Id*.) The Agreement is signed on behalf of PA&K by Packer, and on behalf of Plaintiff by Morris.

7. On September 15, 2015, PA&K and Plaintiff executed an addendum to the Agreement ("Addendum") which provided as follows:

> As an addendum to the original agreement dated May 20, 2015, PA&K, LLC (PA&K) and Morris International, Inc. (MI) agree the definition of cost with regard to this agreement is any cost attendant to the sales, marketing, construction and delivery of a mutually agreed motor coach resort on the Olde Beau property as defined in the agreed and approved land plan.
>
> With regard to Olde Beau Club Facilities which are currently in existence, including maintenance and needed capital improvements, those costs will be incurred by PA&K. Club facilities are defined as the club house, golf course, tennis courts, pool, fitness center and walking trails. Should any of these costs come from the line of credit, when cash flow is distributed to the partners, these

costs will be deducted from PA&K's share of the cash flow distribution.

With regard to marketing costs as defined in the 2015-2016 Marketing Budget for Olde Beau RV Resort, those costs as incurred will come from the line of credit and when cash flow is distributed to the partners, be deducted from MI's share of the cash flow distribution.

The cost of the Project/Sales/Marketing Manager is a draw against commission position and is expected to be paid initially from the line of credit, then as sales occur, these costs will be paid with safes commissions from the RV lots.

(*Id.* at pp. 5–6.)  The Addendum was signed on behalf of PA&K by Packer, and on behalf of Plaintiff by Morris.  The project reflected in the Agreement and Addendum is referred to herein as the "Joint Venture."

8.    Plaintiff alleges that "Packer, as President of PIC, a general partner in OBGP, and on behalf of OBGP, entered into this agreement and committed the real estate to the Olde Beau Joint Venture (the "Property") [ ] to the JV Agreement with the knowledge and authority of OBGP and all its other partners."  (ECF No. 4, at ¶ 21.)

9.    Following the execution of the Agreement, Plaintiff contributed its money, skill, and expertise to the Joint Venture.  Plaintiff alleges it provided the following services:

"a. Engaged a land planner and executed a survey and slope analysis of the [Property]; b.  Designed a 93 site RV resort to be developed in multiple phases; c.  Researched and met with several RV sales professionals across the country to develop marketing and sales strategies; d.  Met with and presented [Plaintiff]'s plan to the Olde Beau membership; e. Conducted over 40 site visits; f. Hired a development manager; g.  Appointed an internal project

manager at [Plaintiff] and devoted other personnel at [Plaintiff] to the project; h. Established a North Carolina limited liability company, Olde Beau RV Resort and Country Club, LLC (subsequently dissolved), to carry out the joint venture's business; i. Developed RV project construction and sales budgets; and j. Visited several top RV resorts in the US."

(*Id*. at ¶ 24.)

10. In addition, the parties: created pro forma sales and profit projections from the RV resort showing expected profits in the millions of dollars; shared hard costs of the project and opened a line of credit to fund the planning and development of the project; and developed a plan to submit for zoning approval. (*Id*. at ¶¶ 26–28.)

11. Barry Poole ("Poole") is involved in developing, marketing, and selling real estate as recreational vehicle ("RV") resort properties, including the real property at issue in this case. (*Id*. at ¶ 8.) Poole negotiated with Plaintiff, PA&K, and OBGP about acting as construction manager for the RV resort project, and through those negotiations, gained detailed knowledge of the plans and opportunities that the Joint Venture was pursuing, and specifically, of Plaintiff's interest in the Joint Venture. (*Id*. at ¶ 38.) Plaintiff does not allege that the parties entered into any type of contract with Poole or that Poole was hired as the construction manager for the Joint Venture.

12. In January 2016, Packer and Morris attended a meeting of the Allegheny County Zoning Board ("Zoning Board") to seek approval for the RV resort. The meeting also was attended by an organized group of vocal and unhappy community members who opposed the project. (*Id*. at ¶¶ 28–29.) The community members made it known that they were contemplating legal action to halt the

development.  (*Id*. at ¶29.)  Although the Zoning Board approved the project, Packer and Morris agreed to "hold off on further development until the threat of legal action was resolved."  (*Id*. at ¶ 31.)  Packer also stated that he "likely would put the [P]roperty up for auction."  (*Id*.)

13.     Regarding the aftermath of the decision to put the Joint Venture on hold, Plaintiff alleges the following:

> 33.  The parties met in late August to discuss the status of the project.  [Plaintiff] asserted that it should be paid its costs for its share of the venture. Packer refused the request.  He said an auction of the [P]roperty had been held with no major changes in the ownership of the [P]roperty, and he was dealing with a lawsuit that the Olde Beau member opposition group had filed.  The meeting ended with no change in the [ ] Joint Venture and acknowledgement that the project was still on hold.
>
> 34.  Packer confirmed the substance of the meeting in a letter dated August 31, 2016.  Regarding the RV project, he said "[w]e are in agreement with you that the [luxury RV resort] is not a reasonable project to proceed with in the current environment due to the action of a small minority of members and the lack of total buy in by the membership created an atmosphere which would make the marketing difficult to reach the planned objectives in the investment."
>
> 35.  Thus, as of the end of August 2016 [Plaintiff] was led to believe and understood that the RV project and other objectives of the [ ] Joint Venture would not proceed, and that Packer, PA&K and OBGP would pursue other opportunities to develop or sell components of the [Property].

(ECF No. 4, at ¶¶ 33–35.)

14.     Unbeknownst to Plaintiff, Packer and Barry Poole formed KPP in July 2017 to act as the developer of the RV resort project that had been the subject of the

Joint Venture (the "New Venture"). (*Id*. at ¶ 37.) In November 2017 Morris learned that Packer and Barry Poole were proceeding with the New Venture. Morris visited the Property and saw that excavation and other land development was underway according to the design that Plaintiff had prepared in pursuit of the Joint Venture. (*Id*. at ¶ 36.)

15. Plaintiff subsequently sent a written request to Packer demanding "as a partner in the [ ] Joint Venture, relevant information about the project, including 'books and records of the project, marketing materials and plans, any existing or pending contracts with vendors or purchasers, and other information relevant to this project.'" (*Id*. at ¶39.) Packer failed to provide the requested information. (*Id*. at ¶ 40.)

## II. PROCEDURAL BACKGROUND

14. Plaintiff filed the Complaint in this matter on January 30, 2020, (ECF No. 3), and an Amended Complaint on March 2, 2020. (ECF No. 4.) This case was designated a mandatory complex business case and assigned to the undersigned. (Design. Ord., ECF No. 1; Assign. Ord., ECF No. 2.)

15. In the Amended Complaint, Plaintiff alleges claims against PA&K and OBGP for: breach of contract (Count I); breach of fiduciary duties (Count II); and dissolution and accounting (Count VIII). Plaintiff alleges a claim for a constructive trust against PA&K, KPP, OBGP, PIC, and KIC (Count III); a claim against OBGP and KPP for an equitable lien (Count IX); and a claim for tortious interference with a business contract and relationship against Barry Poole, Laura Poole, Fagan, Hall,

Davis, KPP, KIC, and PIC (Count VI). Plaintiff alleges claims against all Defendants for: "misappropriation/conversion" (Count IV); violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75-1.1 ("UDTPA") (Count V); and civil conspiracy (Count VII).

16.     On October 30, 2020, Kennington Defendants filed the KIC Motion, and a Brief in Support of the KIC Motion. (ECF Nos. 67–68.)

17.     On November 13, 2020, Packer Defendants filed Packer Defendants' Motion and a Brief in Support of Packer Defendants' Motion. (ECF Nos. 74–75.) Plaintiff filed a Brief in Opposition to Packer Defendants' Motion (ECF No. 81), and Packer Defendants filed a Reply. (ECF No. 82.)

18.     On November 19, 2020, Plaintiff filed a voluntary dismissal of its claims against Fagan, Hall, and Davis without prejudice. (ECF No. 77.) This left KIC as the only remaining Kennington Defendant in the lawsuit. On the same date, Plaintiff filed its Brief in Opposition to the KIC Motion. ("Brief in Opposition," ECF No. 78.) On November 30, 2020, KIC filed a Reply Brief. (ECF No. 79.)

19.     On January 11, 2021, the Court held a hearing on the Motions, which are now ripe for resolution.

III.     ANALYSIS

20.     The Court will first decidePacker Defendants' Motion and then the KIC Motion.

## A. Standard of Review

21. "A [Rule 12(c)] motion for judgment on the pleadings is the proper procedure when all the material allegations of fact are admitted in the pleadings and only questions of law remain. When the pleadings do not resolve all the factual issues, judgment on the pleadings is generally inappropriate." *Ragsdale v. Kennedy*, 286 N.C. 130, 137 (1974) "A complaint is fatally deficient in substance, and subject to a motion by the defendant for judgment on the pleadings if it fails to state a good cause of action for plaintiff and against defendant[.]" *Bigelow v. Town of Chapel Hill*, 227 N.C. App. 1, 3 (citation omitted).

22. When deciding a motion under Rule 12(c), the Court may only consider "the pleadings and exhibits which are attached and incorporated into the pleadings." *Davis v. Durham Mental Health/Dev. Disabilities/Substance Abuse Area Auth.*, 165 N.C. App. 100, 104 (2004). The Court must "view the facts and permissible inferences in the light most favorable to the nonmoving party." *Ragsdale*, 286 N.C. at 137. "All well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false. All allegations in the non-movant's pleadings, except conclusions of law, legally impossible facts, and matters not admissible in evidence at the trial, are deemed admitted by the movant." *Id.* (internal citations omitted).

**B.    Packer Defendants' Motion**

23.    The Court first addresses two arguments made by Packer Defendants that impact multiple claims: that OBGP was not a partner in the Joint Venture; and that the Joint Venture was dissolved on or around August 31, 2016.

*i.    Plaintiff adequately alleges OBGP was a partner in the Joint Venture*

24.    Packer Defendants first argue that OBGP was not a party to the Agreement and that "all claims against OBGP should be dismissed." (ECF No. 75, at pp. 5–6.)[2]  Packer Defendants contend that OBGP was not a signatory to, and is not expressly named in, the Agreement, and that the terms of the Agreement must prevail over the allegations in the Amended Complaint.  (*Id.*)

25.    Plaintiff argues that Packer Defendants, by focusing solely on the written Agreement, ignore the allegations of fact in the Amended Complaint that support the claim that OBGP was a partner in the Joint Venture.  (ECF No.  81, at pp. 1–4.)   Plaintiff contends that in addition to the Agreement, the Court may consider its allegations regarding oral representations, the course of conduct between the parties, and the inferences to be drawn from that conduct.  (ECF No. 4, at pp. 1–4.)  Plaintiff points to its allegations that: (a) OBGP owned the Property (ECF No. 4, at ¶ 4); (b) Packer controlled PIC, a general partner in OBGP (*Id.* at ¶ 5); (c) in seeking out Plaintiff and forming the Joint Venture, Packer acted "on behalf of" PA&K and

---

[2] Although Packer Defendants only argue that OBGP was not a party to the Agreement, and do not expressly argue that OBGP was not a partner in the Joint Venture, the Court interprets Packer Defendants' argument as encompassing the broader contention that OBGP was not a partner in the Joint Venture.

OBGP (*Id.* at ¶¶ 14, 16–17, 21, and 28); and (d) Plaintiff's work on the Joint Venture benefitted OBGP as owner of the Property. (*Id.* at ¶¶ 17, 24.)

26. Under North Carolina law

> A contract, express or implied, is essential to the formation of a partnership. A partnership may be formed by an oral agreement. Even without proof of an express agreement to form a partnership, a voluntary association of partners may be shown by their conduct. A finding that a partnership exists may be based upon a rational consideration of the acts and declarations of the parties, warranting the inference that the parties understood that they were partners and acted as such.

*Potter v. Homestead Preservation Ass'n*, 330 N.C. 569, 576 (1992)

27. The Court concludes that, at this stage of the proceedings, Plaintiff sufficiently alleges that OBGP was a partner in the Joint Venture to survive judgment on the pleadings. Under North Carolina law, a joint venture may be formed by written and oral agreement and can be inferred from the conduct of the parties. Plaintiff alleges statements and conduct by Packer that could support the claim that OBGP was a partner in the Joint Venture despite not being a signatory to the Agreement.

ii. *The pleadings establish that the Joint Venture dissolved*

28. Packer Defendants' primary argument is that the allegations in the Amended Complaint establish that the Joint Venture dissolved on or about August 31, 2016. (ECF No. 75, at pp. 8–11; ECF No. 82, at pp. 3–5.) Packer Defendants contend that dissolution of the Joint Venture eliminated any fiduciary duties between Plaintiff, PA&K, and OBGP and triggered the accrual of certain causes of action

arising from the Joint Venture and the Agreement. (*Id*.) Since this argument could be dispositive of claims alleged by Plaintiff in this action, the Court will next address this question.

29. "A joint [venture] is in the nature of a kind of partnership, and although a partnership and a joint [venture] are distinct relationships, they are governed by substantially the same rules." *Jones v. Shoji*, 336 N.C. 581, 585 (1994) (quoting *Pike v. Trust Co.*, 274 N.C. 1, 9 (1968)). A joint venture is governed by partnership law, as codified in the Uniform Partnership Act. N.C.G.S. § 59-31, et seq.

30. "Ordinarily where an agreement of joint venture fails to fix a definite date of termination, the agreement remains in force until its purpose is accomplished or until such accomplishment has become impracticable." *Oliver v. Roberts*, 49 N.C. App. 311, 315-16 (1980). N.C.G.S. § 59-61 (providing that unless specified otherwise in the partnership agreement, a partnership dissolves by "the termination of the definite term or particular undertaking specified in the agreement."). Furthermore, "[o]n dissolution, the partnership is not terminated, but continues until the winding up of partnership affairs is completed." N.C.G.S. § 59-60. *Simmons v. Quick-Stop Food Mart, Inc.*, 307 N.C. 33, 40 (1982). "Winding up generally involves the settling of accounts among partners and between the partnership and its creditors." *Id.* A right to an account of partnership interests accrues at the date of dissolution. N.C.G.S. § 59-73. A claim for winding up and accounting of a partnership is a statutory claim for which no other limitations period is provided and is therefore subject to a three-year statute of limitations. N.C.G.S. § 1-52(2).

31.    Packer Defendants contend that "this agreement with PA&K, LLC and Morris International (MI) represents the working relationship agreed by the parties for moving forward with the development of properties and infrastructure at the Olde Beau Golf and Country Club site in Roaring Gap, NC," and that other allegations make it clear that the primary purpose of the Joint Venture was the development of the luxury RV resort.[3] (ECF No. 75, at p. 9.)  Packer Defendants further contend that Plaintiff's allegations show that on or about August 31, 2016, Packer had notified Plaintiff that it was not reasonable to proceed with the RV resort project, that Plaintiff concedes that it "understood that the RV project and other objectives of the . . . Joint Venture would not proceed, and that Packer, PA&K, and OBGP would pursue other opportunities to develop or sell components of the [Property]." (ECF No. 75, at p. 10; quoting ECF No. 4, at ¶ 35.)  Plaintiff also asked to be reimbursed for its costs expended on behalf of the Joint Venture and dissolved the limited liability company it had formed "to carry out the joint venture's business." (ECF No. 4, at ¶¶ 27(h), 32, and 33.)

---

[3] The Amended Complaint alleges that "[u]nder the terms of the JV Agreement, [Plaintiff], OBGP, and PA&K agreed to develop property and infrastructure for three aspects of the Olde Beau property: a 'Luxury RV Resort,' 'The NOAH Project,' and the 'existing Olde Beau Property.'  For each of these developments, the parties agreed to share costs and profits generated from sales of the respective properties." (ECF No. 4, at ¶ 19.)  However, Plaintiff makes no allegations regarding any aspect of the Joint Venture other than the development of the RV resort and does not separately allege that PA&K and OBGP breached any agreement regarding the Joint Venture other than the RV resort project.  Finally, the parties have not provided the Court with any information regarding any part of the Joint Venture other than the luxury RV resort and have made no arguments regarding any project outside of the RV resort.

32.     In response, Plaintiff contends that the "Packer Defendants urge the Court to cherry pick allegations in the Amended Complaint to find as a factual matter that the joint venture terminated in August 2016, while disregarding inconsistent allegations and fair inferences in favor of Plaintiff." (ECF No. 81, at pp. 7–8.)  For example, Plaintiff argues that allegations that the RV resort project was "on hold until the threat of litigation was resolved is in conflict with the notion" that the Joint Venture was dissolved in August 2016.  (*Id*. at p. 9.)  Plaintiff also asserts that

> a fair reading of paragraph 35, with due inferences in favor of the non-moving party would be: Thus, as of the end of August 2016 [Plaintiff] was led to believe and thus understood that the RV project would not proceed at that time pending resolution of the opposition legal action, and that Packer, PA&K and OBGP would pursue opportunities other than the RV project to develop or sell components of the Olde Beau property.  This reading of paragraph 35 is consistent with the allegations in paragraphs 31-34, and is a fair reflection of the fact that [Plaintiff] never agreed or contemplated that its joint venture partners would, among all the possible alternatives, form a new venture to develop the same RV project on the same land according to the same plans developed by [Plaintiff].

(*Id*. at p. 9.)  Plaintiff also argues that the question of whether the Joint Venture was dissolved is a "factual inquiry" that cannot be determined in this case without "impermissible resolution of questions of fact." (*Id*. at p. 10.)

33.     After thorough consideration, the Court concludes that Plaintiff's allegations establish that on or about August 31, 2016, the development of the luxury RV resort had become impracticable, the Joint Venture's purpose could not reasonably be accomplished, and the Joint Venture dissolved.  *Oliver v. Roberts*, 49 N.C. App. at 315–316.  Plaintiff alleges that after a seven-month delay in the project,

it "understood" the RV resort project to be at an end on or about August 31, 2016, and that "Packer, PA&K and OBGP would pursue other opportunities to develop or sell components of the [Property]." (ECF No. 4, at ¶ 35.) Plaintiff does not claim that it objected to Packer's assertion that the project could not proceed. To the contrary, Plaintiff makes other allegations consistent with an understanding that the Joint Venture had ceased. Plaintiff alleges that Packer stated he intended to put the Property up for auction but does not allege that Plaintiff objected to Packer's stated intention. (*Id*. at ¶ 31.) Plaintiff asked to be reimbursed for its out-of-pocket costs in the project (*Id*. at ¶ 32) and dissolved the limited liability company it had formed "to carry out the [J]oint [V]enture's business." (*Id*. at ¶ 24.)

34. The allegations in the Amended Complaint establish that the Joint Venture dissolved on or about August 31, 2016. The Court now turns to Plaintiff's claims againstPacker Defendants.

### iii. Breach of contract

35. As its first claim, Plaintiff alleges that PA&K and OBGP breached the Agreement by proceeding with the New Venture in 2017 without Plaintiff's involvement after leading Plaintiff to believe the project was "in abeyance." (ECF No. 4, at ¶¶ 41–49.) Plaintiff alleges that it "has been damaged as a result of PA&K's and OBGP's breach" and seeks money damages and an order of specific performance. (*Id*. at ¶¶ 47–49.)

36. Packer Defendants argue that the dissolution of the Joint Venture terminated the contractual rights and obligations the parties had to one another

under the Agreement to develop the RV resort, and that those rights became unenforceable. (ECF No. 75, at pp. 10–11; ECF No. 82, at p. 4.) Packer Defendants contend that the dissolution triggered Plaintiff's right to seek a winding up and accounting of its interests in the Joint Venture under N.C.G.S. §§ 59-67 and 59-73, and that following dissolution "PA&K did not owe any obligation to the Joint Venture other than to cooperate in winding up its affairs." (*Id*. at p. 11.) Packer Defendants argue that the right to winding up "is a contractual right" subject to the three-year statute of limitations appearing at N.C.G.S. § 1-52(1), and that "Plaintiff's right to an account of its Joint Venture interest expired in August 2019," long before Plaintiff filed this lawsuit. (*Id*.) In other words, Packer Defendants assert that any rights Plaintiff has in the Joint Venture following dissolution had to be pursued through a claim for winding up. Plaintiff does not specifically respond to Packer Defendants' argument, relying instead on its contention that the Joint Venture was not dissolved.

37. The Court concludes that Defendants' argument has merit. As discussed above, the allegations establish that the Joint Venture dissolved on or about August 31, 2016, because the development of the luxury RV resort became untenable. Plaintiff understood the project to be at an end and that PA&K and OBGP would pursue other opportunities for the Property. Under these allegations, any contractual obligation that PA&K and OBGP had to include Plaintiff in development of the Property arising from the Agreement necessarily ceased when the Joint Venture dissolved. Packer and KPP's decision to proceed with the RV resort project in 2017 did not breach any existing contractual obligation to Plaintiff.

38.     Furthermore, to the extent Plaintiff wished to pursue its rights under the Agreement, it could have pursued those rights during a winding up and accounting of the Joint Venture.  *Chesson v. Rives*, 2013 NCBC LEXIS 46, at \*16 (N.C. Super. Ct. Oct. 28, 2013) (holding that partners could pursue "partnership rights . . . which survived dissolution through an accounting.")  Plaintiff's right to a winding up and accounting of the Joint Venture accrued on or about August 31, 2016, and that right was subject to the three year statute of limitations in N.C.G.S. § 1-52(2) (stating that actions must be commenced within 3 years from accrual "[u]pon a liability created by statute, either state or federal, unless some other time is mentioned in the statute creating it.").[4]  Therefore, to the extent Packer Defendants seek dismissal of Plaintiff's claim for breach of contract based on Packer and KPP proceeding with the New Venture, Packer Defendants' Motion should be GRANTED.

*iv.     Breach of fiduciary duty*

39.     Plaintiff alleges that "[a]s partners in the [ ] Joint Venture, PA&K and OBGP owed fiduciary duties to" Plaintiff and breached those duties by "failing to acknowledge the [ ] Joint Venture with [Plaintiff], and appropriating the Joint Venture's assets and business opportunities, without the knowledge, authorization, consent, or ratification of [Plaintiff], for PA&K's and OBGP's (and others acting in concert with them) own selfish interests" and "by refusing [Plaintiff]'s direct, written

---

[4] Packer Defendants' contention that Plaintiff's right to a winding up and accounting is subject to the three-year statute of limitation applicable to claims arising from a contract (N.C.G.S. § 1-52(1)) is misplaced.  The right to a winding up and accounting was not provided for in the Agreement.  Rather, in this case, it is provided by the applicable provisions of the North Carolina Uniform Partnership Act (the "Act").

request for the books and other material information relating to the [ ] Joint Venture and the RV resort project." (ECF No. 4, at ¶¶ 51–53.)

40.     Defendants incongruously contend that the fiduciary duties owed to Plaintiff by PA&K and OBGP ended when the Joint Venture dissolved, but also concede that "[t]he partnership continue[d] after dissolution until the winding up of the partnership affairs is completed" and assert that "[t]o the extent a fiduciary duty exists after dissolution, it would be limited to winding up the partnership, not to future business because the partnership has been dissolved." (*Id.*; quoting *Simmons*, 307 N.C. at 39.)

41.     North Carolina's appellate courts have not expressly addressed the nature of any continuing fiduciary obligations partners owe one another following dissolution of the partnership during the period of winding up the partnership's business, accounting, and distributing partnership assets.  However, the statutory obligations placed on partners support the existence of a continuing fiduciary duty following dissolution, at least with respect to the protection of partnership assets and conducting a proper accounting and distribution.  The Act provides that a partnership continues following dissolution and until a winding up has occurred.  N.C.G.S. § 59-60.  Partners act as stewards of the partnership's property and are accountable to one another for use of such property.  Section 59-51, titled "Partner accountable as a fiduciary," provides, "[e]very partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct or liquidation

of the partnership or from any use by him of its property." Once partnership liabilities have been discharged, a partner is entitled to his net share of the value of any partnership property. N.C.G.S. § 59-68. Furthermore, "[N.C.G.S.] § 59-50 requires partners to render on demand true and full information of all things affecting the partnership to any partner." *See Compton v. Kirby*, 157 N.C. App. 1, 15 (2003). Concluding that partners' fiduciary duties to one another cease upon dissolution but prior to an accounting for and distribution of partnership property would be antithetical to the requirements of the Act.

42. In addition, other jurisdictions have concluded that a partners' fiduciary duties continue beyond dissolution and until a partnership has been wound up. *Wilson v. Scruggs*, 371 F. Supp. 2d 837, 840 n. 4 (2005) ("[N]umerous cases have held that the fiduciary duties of partners continue until the partnership affairs are wound up following dissolution of the partnership"; and cases cited therein.); *Steeby v. Fial,* 765 P.2d 1081, 1084 (Colo. App. 1988) ("Even after dissolution of a partnership, both partners continue to have a fiduciary duty to the other partner that continues until the partnership assets have been divided and the liabilities have been satisfied"); *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 480 B.R. 145, 156 (S.D.N.Y 2012) ("Post-dissolution, former partners generally do not owe fiduciary duties either to one another or to the dissolved firm. But there is an important exception: they have a continuing duty to each other as they wind up the partnership's affairs, including winding up the partnership's unfinished business."), *rev'd on other grounds*, 574 Fed. Appx. 15 (2nd Cir. 2014).

43.     The Court concludes that PA&K and OBGP owed fiduciary duties to Plaintiff following dissolution of the Joint Venture and through the period during which Plaintiff was entitled to seek a winding up.  PA&K and OBGP had continuing obligations to preserve, account for, and distribute partnership property assets, and to provide an accounting of partnership assets, through on or about August 31, 2019. Plaintiff alleges that among the assets the Joint Venture held at the time of dissolution were "valuable designs, marketing plans, slope analyses, surveys, zoning authorizations and other substantial intellectual property that was materially created and developed through substantial effort by [Plaintiff]."[5]  (ECF No. 4, at ¶ 54.)  Plaintiff further alleges that sometime in 2017, KPP proceeded with the New Venture using "the design that [Plaintiff] had prepared in pursuit of the [Joint Venture]." (*Id*. at ¶ 36.)  Plaintiff also alleges that after it learned of the New Venture, presumably sometime in late 2017 or 2018, Plaintiff "demanded, as a partner in the [ ] Joint Venture, relevant information about the project, including 'books and records of the project, marketing materials and plans, any existing or pending contracts with vendors or purchasers, and other information relevant to this project,'" but that Packer refused to provide the information.  (*Id*. at ¶ 39.)  Plaintiff filed this lawsuit on March 2, 2020.  Therefore, Plaintiff alleges timely claims for breach of fiduciary duty for failure to preserve and account for partnership property and failure to

---

[5] Plaintiff does not allege that the Joint Venture owned any other assets at the time of dissolution.  Plaintiff does not allege that the Property, or any portion of it, had been conveyed to the Joint Venture or that the Property was owned by the Joint Venture at the time it dissolved.  To the contrary, Plaintiff alleges that OBGP conveyed 10.38 acres of the Property to KPP in March 2018.  (ECF No. 4, at ¶ 65.)

provide access to the books, records, and other information regarding the Joint Venture. *Honeycutt v. Weaver*, 257 N.C. App. 599, 604 (2018) ("Allegations of breach of fiduciary duty . . . are governed by the [3]-year statute of limitations applicable to contract actions contained in [N.C.G.S] § 1-52(1)[.]").

44.     For the foregoing reasons, to the extent Packer Defendants seek dismissal of Plaintiff's claim for fiduciary duty, Packer Defendants' Motion should be DENIED.

   *v.     Conversion*

45.     Plaintiff alleges that:

> [t]he [Joint Venture] had substantial assets that were contributed by [Plaintiff] in the form of intellectual property, marketing strategy and plans, site planning, slope analysis, zoning approval and other valuable and material components of a viable venture . . . In violation of [Plaintiff]'s rights and without its knowledge, participation or consent, the Defendants joined forces to wrongfully appropriate these assets to their own benefit, and to the detriment of [Plaintiff] and the [Joint Venture].

(ECF No. 4, at ¶¶ 75–76.)  Plaintiff brings its claim for conversion against, *inter alia*, Packer, KPP, PA&K, OBGP, and PIC.  (*Id.* at p. 15.)

46.     Under North Carolina law, conversion is the "unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523, (2012) (citation omitted).  There are two elements in a claim for conversion: (1) the plaintiff's ownership, and (2) the defendant's wrongful possession.  *Id.*

47.     Packer Defendants argue that Plaintiff lacks standing to sue for conversion because the property at issue was owned by the partnership and any claim for conversion must be brought in the name of the partnership.  With regard to Packer and KPP, who are third parties and were not partners in the Joint Venture, Packer Defendants are correct.

48.     To the extent Plaintiff claims that Packer or KPP converted marketing strategies, site plans and analysis, and other materials that Plaintiff contributed to the Joint Venture, Plaintiff lacks standing to pursue the claim and it must fail.  Plaintiff alleges that the contributed plans and materials became the Joint Venture's property.  (ECF No. 4, at ¶¶ 21, 24–25, 75.)  By statute, any property that the Plaintiff "originally brought into the partnership stock" or that was "subsequently acquired by purchase or otherwise, on account of the partnership, is partnership property." N.C.G.S. § 59-38.  Since the property that was allegedly converted was partnership property, only the partnership, not the individual partners, can assert the claim for conversion.  *Ron Medlin Constr. v. Harris*, 364 N.C. 577, 584 (2010) ("[W]hen property is owned by a partnership, the partnership is the real party in interest for purposes of pursuing a civil action pertaining to the partnership property"); *see also BDM Invs. v. Lenhil, Inc.*, 2012 NCBC LEXIS 7, at *27 (N.C. Super. Ct. Jan. 18, 2012).  Plaintiff has not sued in the name of the Joint Venture.

49.     In response to Packer Defendants' argument, Plaintiff does not dispute that the property at issue was owned by the Joint Venture and not by Plaintiff. Instead, relying on *Gaskin v. J.S. Procter Co., LLC*, Plaintiff tries to argue that it

should be permitted to sue individually because it was owed a "special duty." 196

N.C. App. 447 (2009) (ECF No. 81, at p. 5–7, 12.) In *Gaskin,* the Court of Appeals

held:

> The general rule of partner standing to sue individually is stated in *Energy Investors* [*Fund, L.P. v. Metric Constructors, Inc.*]: "It is settled law in this State that one partner may not sue in his own name, and for his benefit, upon a cause of action in favor of a partnership." 351 N.C. [331], at 336-37 (citation and quotation marks omitted). The rule includes a cause of action against other partners in the partnership, *Jackson v. Marshall*, 140 N.C. App. 504, 508, 537 (2000), *disc. review denied*, 353 N.C. 375 (2001), as well as a cause of action against an unrelated third party, *Energy Investors*, 351 N.C. at 336-37. "The only two exceptions to this rule are: (1) a plaintiff alleges an injury 'separate and distinct' to himself, or (2) the injuries arise out of a 'special duty' running from the alleged wrongdoer to the plaintiff." 351 N.C. at 335 (emphasis added) (recognizing the two exceptions in a suit brought by a limited partner and citing *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 660, (1997), which recognized the same two exceptions in a suit brought by shareholders in a corporation).

196 N.C. App. at 451

50. Plaintiff's reliance on *Gaskin* is misplaced. First, the *Barger* exceptions

do not apply to claims raised by a partner in a general, as opposed to a limited,

partnership. *See Gillespie v. Majestic Transp., Inc.*, 2016 NCBC LEXIS 69, *10-11

(N.C. Super. Ct. Sept. 9, 2016). In this case, the Joint Venture was a general

partnership.

51. In addition, Plaintiff does not allege, nor support by argument, that

Packer and KPP owed Plaintiff a fiduciary or any other special duty. *See Energy*

*Investors*, 351 N.C. at 335 (stating plaintiff must allege a special duty "running from

the *alleged wrongdoer* to the plaintiff") (emphasis added). Plaintiff does not allege facts that provide grounds for it to assert individual or direct claims for conversion against Packer and KPP. Accordingly, to the extent Defendants seek dismissal of Plaintiff's claim for conversion against Packer and KPP, Packer Defendants' Motion should be GRANTED.

52. Plaintiff's claims against PA&K, OBGP, and PIC are a different story. Plaintiff alleges that PA&K and OBGP were partners with Plaintiff in the Joint Venture. A partner may bring an action for conversion against another partner. *Pugh v. Newbern*, 193 N.C. 258, 261 (1927) ("A partner may maintain an action at law against his copartner . . . [w]hen the joint property [of the partnership] has been wrongfully destroyed or converted."); *Lewis v. Boling*, 42 N.C. App. 597, 606 (1979) (noting that a claim for conversion of partnership property is an exception to the rule that one partner cannot sue another); *Gillespie*, 2016 NCBC LEXIS 69, at *16. Therefore, Plaintiff's claim for conversion against PA&K and OBGP survive judgment on the pleadings at this stage of the action.

53. Plaintiff also alleges that PIC was a general partner in OBGP. (ECF No. 4, at ¶ 5.) As a general partner, PIC "is jointly and severally liable for the acts and obligations of" OBGP. N.C.G.S. § 59-45(a). Since Plaintiff alleges a viable claim for conversion against OBGP, the claim against PIC, as a partner in OBGP, survives. *Ron Medlin Constr.*, 364 N.C. at 583; *Johnson v. Gill*, 235 N.C. 40, 44 (1952) ("[T]he common law rule of joint and several liability of partners for a tort committed by one of the members of the partnership is incorporated in the Uniform Partnership Act.");

*Stevens v. Nimocks*, 82 N.C. App. 350, 352 (1986) ("It is well established that each partner in a partnership is jointly and severally liable for a tort committed in the course of the partnership business, and the injured party may sue all members of the partnership or any one of them at his election.").

54.     To the extent Defendants seek dismissal of Plaintiff's claim for conversion against PA&K, OBGP, and PIC,Packer Defendants' Motion should be DENIED.

   *vi.     Tortious interference with contract*

55.     In its fifth count in the Amended Complaint, Plaintiff makes claims for tortious interference with contract against, *inter alia*, PIC and KPP.  (ECF No. 4, at ¶¶ 91–95.)  Plaintiff alleges that "[e]ach of the Defendants at all relevant times had actual knowledge of the [ ] Joint Venture, and of [Plaintiff]'s interest in the RV resort project."  (*Id*. at ¶ 92.)  Plaintiff further alleges "[w]ith wrongful intent to induce PA&K and OBGP to breach their joint venture agreement and partnership with [Plaintiff], the Defendants, and each of them, interfered in the relationship and induced PA&K and OBGP to breach the Agreement." (*Id*. at ¶¶ 92–93.)  Plaintiff further alleges that Defendants' conduct was "willful, malicious and wanton." (*Id*. at ¶ 94.)

56.     The elements of and pleading requirements for a claim of tortious interference with contract are well established.  *See Morris Int'l v. Packer*, 2020 NCBC LEXIS 122, *14-17 (N.C. Super. Ct. Oct. 15, 2020).  In support of dismissal, Packer Defendants contend that

> Plaintiff does not allege that KPP or PIC acted without justification or that there was no legitimate business purpose for KPP to obtain the property. Plaintiff does not allege facts as to the nature of conduct by KPP that would have induced PA&K and OBGP to breach the Agreement or how KPP interfered with the Agreement. Plaintiff does not allege in what way KPP's conduct was malicious.

(ECF No. 75, at p. 18.)

57. The Court agrees with Packer Defendants' argument. The Amended Complaint alleges that KPP was formed for the purpose of developing the RV resort and that OBGP conveyed the portion of the Property on which the resort is being developed to KPP. (ECF No. 4, at ¶¶ 37, 65.) PIC is a general partner in OBGP. (*Id.* at ¶ 5.) These allegations support the conclusion that KPP and PIC had a business interest in the RV resort project. In order to survive dismissal, a complaint alleging tortious interference "must admit of no motive for interference other than malice." *Pinewood Homes, Inc. v. Harris*, 184 N.C. App. 597, 605 (2007); *Filmar Racing, Inc. v. Stewart*, 141 N.C. App. 668, 674 (2001) ("[W]e have held that the complaint must admit of no motive for interference other than malice").

58. Plaintiff does not allege facts regarding how, or by what conduct, KPP and PIC induced a party to breach, or otherwise interfered with, the Agreement. Instead, Plaintiff simply alleges that they "interfered" and "induced PA&K and OBGP to breach the Agreement." (ECF No. 4, at ¶ 93.) The Court is not required to accept these conclusory allegations which are unsupported by the facts.

59. Finally, although Plaintiff alleges that the interference was "willful, malicious, and wanton," (*Id.* at ¶ 94), in the absence of "specific, supportive, factual

allegations, the [C]ourt need not accept as true general conclusory allegations of the elements of a cause of action for purposes of a motion to dismiss." *Plasman v. Decca Furniture (USA), Inc.*, 2016 NCBC LEXIS 80, \*43-44 (N.C. Super. Ct. Oct. 21, 2016) (quoting *Global Promotions Grp., Inc. v. Danas, Inc.*, 2012 NCBC LEXIS 40, at \*12 (N.C. Super. Ct. June 22, 2012).

60. Plaintiff has not adequately alleged claims for tortious interference with contract against KPP and PIC. To the extent they seek dismissal on Plaintiff's claim for tortious interference with contract against KPP and PIC, Packer Defendants' Motion should be GRANTED.

*vii.    UDTPA*

61. Plaintiff alleges that Packer and the other Packer Defendants violated the UDTPA by pursuing the New Venture and "concealing" it from Plaintiff, and by "excluding" Plaintiff from participation in the New Venture. (ECF No. 4, at ¶ 83.) Plaintiff further alleges that "PA&K's and OBGP's conduct constitutes breach of fiduciary duties and constructive fraud which supports" the UDTPA claim, but alleges only that the other Packer Defendants knew about Plaintiff's previous involvement in the Joint Venture and acted in "their own selfish interests." (*Id.* at ¶¶ 84–87.)

62. Packer Defendants argue that the UDTPA claim must be dismissed because PA&K and OBGP did not owe Plaintiff fiduciary duties at the time of the New Venture. (ECF No. 75, at pp. 16–17.) The Court already has concluded that PA&K and OBGP continued to have fiduciary obligations to Plaintiff with regard to

preserving the Joint Venture's assets and providing access to information regarding the Joint Venture at the time the New Venture commenced. A breach of fiduciary can support a claim for violation of the UDTPA. *White v. Thompson*, 196 N.C. App. 568, 574 (2009), *aff'd*, 364 N.C. 47 (2010). Therefore, PA&K and OBGP are not entitled to judgment on the pleadings on Plaintiff's claim for violation of the UDTPA.

63. The Court also concludes that Plaintiff has pleaded UDTPA claims against Packer, PIC, and KPP. The Amended Complaint alleges that PIC is a general partner in OBGP, that Packer is the President of PIC, and that Packer acted as an agent of both PA&K and OBGP in the Joint Venture. Packer also is a member of KPP. Plaintiff alleges that KPP used Joint Venture assets in conducting the New Venture, and that Packer has refused to provide Plaintiff with books, records or other information about the Joint Venture or KPP. Read together, these allegations could support a claim that Packer Defendants have engaged in conduct that "possessed the tendency . . . to mislead" or deceive. *RD&J Props. v. Lauralea-Dilton Enters., LLC*, 165 N.C. App. 737, 748 (2004) ("To prevail on a Chapter 75 claim, a plaintiff need not show fraud, bad faith, or actual deception. Instead, it is sufficient if a plaintiff shows that a defendant's acts possessed the tendency or capacity to mislead or created the likelihood of deception.")

64. To the extent Packer Defendants seek dismissal as to Plaintiff's claim for violation of the UDTPA against Packer Defendants,Packer Defendants' Motion should be DENIED.

### viii. Civil conspiracy

65.    Plaintiff alleges thatPacker Defendants engaged in a civil conspiracy causing injury to Plaintiff as follows:

> 97.  The Defendants all entered an agreement to pursue the [New Venture], with knowledge that their actions were unlawful as relating to [Plaintiff] and its interest in the [Joint Venture].
>
> 98.  Each of the Defendants willfully and wantonly participated in pursuit of the goal of their agreement.
>
> 99.  Each of the Defendants, acting in concert with the others, caused damage to [Plaintiff].

(ECF No. 4, at ¶¶ 97–99.)

66.    "There is no independent cause of action for civil conspiracy.  Only when there is an underlying claim for unlawful conduct can a plaintiff state a claim for civil conspiracy by also alleging the agreement of two or more parties to carry out the conduct and injury resulting from the agreement." *Toomer v. Garrett*, 155 N.C. App. 462, 483 (2002).  "The charge of conspiracy itself does nothing more than associate the defendants together and perhaps liberalize the rules of evidence to the extent that under proper circumstances the acts and conduct of one might be admissible against all." *Shope v. Boyer*, 268 N.C. 401, 405 (1966); *see also GoRhinoGo, LLC v. Lewis*, 2011 NCBC LEXIS 39, at *20 (N.C. Super. Ct. Sept. 9, 2011) ("Having joined the conspiracy, [two individual defendants] became exposed to liability with [co-defendant] and any other co-conspirators for damages caused by any act in furtherance of the common scheme.").

67.     To plead a claim for civil conspiracy, a plaintiff must allege: "(1) An agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." *Piraino Bros., LLC v. Atlantic Fin. Grp., Inc.*, 211 N.C. App. 343 (2011).

68.     Packer Defendants argue that the conspiracy claim should be dismissed because it does not allege facts showing "how the conspiracy came to be, when, or why." (ECF No. 75, at p. 19; citing *Bottom v. Bailey*, 238 N.C. App. 202, 213 (2014)). Plaintiff argues that its allegations sufficiently state a claim for civil conspiracy. (ECF No. 81, at pp. 15–16.)

69.     The Court has reviewed the allegations in the Amended Complaint and concludes that while long on conclusory claims and short on specific facts, the allegations nonetheless state a claim for civil conspiracy sufficient to stave off judgment at this time.  The Court has determined that Plaintiff's claims for breach of fiduciary duty, conversion, and unfair trade practices can proceed, providing the required underlying unlawful act.  Plaintiff also alleges facts from which it could be inferred that PA&K, OBGP, Packer, PIC, and KPP engaged in a common scheme to convert to KPP's use certain assets contributed by Plaintiff to, and owned by, the Joint Venture and to deny Plaintiff information regarding the Joint Venture. Plaintiff also alleges that it was injured by these actions.   Therefore, to the extent Packer Defendants seek dismissal of Plaintiff's claim for civil conspiracy against Packer Defendants, Packer Defendants' Motion should be DENIED.

*ix. Dissolution and accounting*

70.     Packer Defendants also seek dismissal of Plaintiff's eighth count for dissolution and an accounting of the Joint Venture on the grounds that the Joint Venture dissolved on or about August 31, 2016, and that Plaintiff's time to request an accounting expired on or around August 31, 2019, making it untimely. (ECF No. 75, at p. 19.)

71.     The Court has concluded that Plaintiff's allegations establish that the Joint Venture partnership dissolved on or around August 31, 2016. Accordingly, the claim for dissolution is moot. Plaintiff's claim for accounting arose on the date of dissolution, (N.C.G.S. § 59-73), but Plaintiff did not file its claim for accounting until January 30, 2020. Therefore, the claim for dissolution is barred by the 3-year statute of limitations. N.C.G.S. § 1-52(2).

72.     Therefore, to the extent Packer Defendants seek dismissal of Plaintiff's claim for dissolution and accounting, Packer Defendants' Motion should be GRANTED.

*x. Constructive trust and equitable lien*

73.     Plaintiff seeks imposition of a constructive trust over the Property, (ECF No. 4, at ¶¶ 57–72), and claims an equitable lien on the Property. (*Id.* at ¶¶ 105–11.) "When a court impresses a constructive trust upon property for the benefit of a claimant, it exercises its equitable powers to fashion remedies." *Weatherford v. Keenan*, 128 N.C. App. 178, 179 (1997). "[A] constructive trust is not a standalone claim for relief or cause of action." *LLG-NRMH, LLC v. Northern Riverfront Marina*

*& Hotel, LLLP*, 2018 NCBC LEXIS 105, at *14 (N.C. Super. Ct. Oct. 9, 2018) (citing *Weatherford* as quoted herein).

> A constructive trust is a duty, or relationship, imposed by courts of equity to prevent the unjust enrichment of the holder of title to, or of an interest in, property which such holder acquired through fraud, breach of duty or some other circumstance making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust.

*Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 530 (2012) (quoting *Wilson v. Crab Orchard Dev. Co.*, 276 N.C. 198, 211 (1970). "In the absence of [a fiduciary] relationship, [the plaintiff] faces the difficult task of proving some other circumstance making it inequitable" for a defendant to possess the property at issue. *Id.* at 520-31 (quotation omitted).

74. An equitable lien is a remedy. An equitable lien arises "[w]here property of one person can by a proceeding in equity be reached by another as security for a claim on the ground that otherwise the former would be unjustly enriched." *Embree Constr. Group, Inc. v. Rafcor, Inc.,* 330 N.C. 487, 496 (1992) (quoting Restatement of Restitution § 161 (1937)). An equitable lien is available only where a party has no adequate remedy at law. *James River Equipment, Inc. v. Tharpe's Excavating, Inc.*, 179 N.C. App. 336, 345 (2006).

75. Packer Defendants argue, *inter alia*, that the dissolution of the Joint Venture extinguished any basis for Plaintiff to seek a constructive trust over the Property, and that Plaintiff has failed to establish that it does not have an adequate

remedy at law. (ECF No. 75, at p. 13.) The Court finds merit inPacker Defendants' argument.

76. The pleadings establish that the Joint Venture dissolved on or about August 31, 2016. The dissolution ended any contractual obligation PA&K and OBGP had to contribute the Property to the Joint Venture. To the extent PA&K and OBGP had continuing fiduciary duties to Plaintiff following dissolution, those obligations were only to preserve the assets already owned by the Joint Venture and to participate in a winding-up and dissolution of the Joint Venture. Plaintiff does not allege that the Property had been conveyed to the Joint Venture or that the Joint Venture owned the Property as of the time it dissolved. To the contrary, Plaintiff alleges that OBGP continued to own the Property and conveyed 10.38 acres of the Property to KPP in March 2018. (ECF No. 4, at ¶ 65.) Therefore, PA&K and OBGP did not breach fiduciary duties to Plaintiff by conveying the property to KPP.

77. In addition, Plaintiff has not established that it lacked an adequate remedy at law with regard to its claims involving the Property. Where, as in this case, a partnership agreement exists, a partner must first pursue its legal remedies before it can invoke the court's equitable authority. 330 N.C. at 578–79. In *Potter*, the Court held:

> These remedies may include an action for breach of contract or dissolution, winding up, and distribution of partnership assets under North Carolina's Uniform Partnership Act. In the event remedies under the law fail to give relief, a partner may be entitled to pursue a partnership interest through such remedies in equity as an equitable lien based upon fraud or an equitable trust based upon unjust enrichment. The partner's right to such

> equitable remedies, however, does not exist for any practical purpose until the affairs of the partnership have to be wound up, or the share of a partner has to be ascertained. Such a lien based on fraud does not come into existence until actual dissolution occurs. In other words, plaintiff must pursue her legal remedies first.

*Id*. at 578 (quotations and citations omitted).

78. Plaintiff has failed to plead or argue that it lacked an adequate remedy at law for its claims that PA&K and OBGP promised to contribute the Property to the Joint Venture. To the contrary, Plaintiff discovered that the New Venture was underway in November 2017. Plaintiff could have sought a winding-up and accounting of the Joint Venture, in which it could have pursued its claim to an equitable interest in the Property, by filing an appropriate action under N.C.G.S. § 59-67 on or before August 31, 2019. Plaintiff chose not to do so. Consequently, no winding-up and accounting occurred. Plaintiff also could have claimed an interest in the Property by timely suing PA&K and OBGP for breach of the Agreement but did not do so. *Crosby v. Bowers*, 87 N.C. App. 338, 344–45 (1987).

79. Plaintiff has not established that it lacks an adequate remedy at law for its claims regarding the Property. Therefore, to the extent it seeks dismissal on Plaintiff's claims for constructive trust and equitable lien, Packer Defendants' Motion should be GRANTED.

## C. KIC Motion

80. The Amended Complaint purports to make claims against KIC for conversion, unfair and deceptive trade practices, tortious interference, civil conspiracy, and constructive trust. The only allegation regarding KIC in the

Amended Complaint is that it "is a general partner of OBGP and is, upon information and belief, controlled by [Fagan]." (ECF No. 4, at ¶ 6.) Plaintiff does not allege that KIC or Fagan engaged in any specific conduct involving the Joint Venture or the New Venture.

81.     KIC moves for dismissal on the grounds that the Amended Complaint fails to allege any claims against it. (ECF No. 68, at pp. 6–7.) In its Brief in Opposition, Plaintiff does not respond to KIC's argument.

82.     Nonetheless, Plaintiff alleges that KIC is a general partner in OBGP, and accordingly, KIC is jointly and severally liable for any torts committed by OBGP. *See* N.C.G.S. § 59-45(a). Therefore, to the extent any of the claims stated against both OBGP and KIC have survived Packer Defendants' Motion, so too must they survive against KIC. Accordingly, to the extent the KIC Motion seeks judgment as to Plaintiff's claims for conversion, unfair and deceptive trade practices, and civil conspiracy, the motion should be DENIED. However, to the extent the KIC Motion seeks judgment as to Plaintiff's claims for tortious interference and constructive trust, the motions should be GRANTED.

IV.    CONCLUSION

THEREFORE, it is ORDERED that:

1.    To the extent Packer Defendants' Motion seeks judgment on the pleadings as to Plaintiff's claim for breach of contract based on Packer and KPP proceeding with development of the RV resort on

the Property, Packer Defendants' Motion is GRANTED, and the claim is dismissed.

2.  To the extent Packer Defendants' Motion seeks judgment on the pleadings as to Plaintiff's claim for breach of fiduciary duty, Packer Defendants' Motion is DENIED.

3.  To the extent Packer Defendants' Motion seeks judgment on the pleadings as to Plaintiff's claim for conversion against Packer and KPP, Packer Defendants' Motion is GRANTED, and the claim is dismissed.

4.  To the extent Packer Defendants' Motion seeks judgment on the pleadings as to Plaintiff's claim for conversion against PA&K, OBGP, and PIC, Packer Defendants' Motion is DENIED.

5.  To the extent Packer Defendants' Motion seeks judgment on the pleadings as to Plaintiff's claim for tortious interference with contract against KPP and PIC, Packer Defendants' Motion is GRANTED, and the claim is dismissed.

6.  To the extent Packer Defendants' Motion seeks judgment on the pleadings as to Plaintiff's claim for violation of the UDTPA against Packer Defendants, Packer Defendants' Motion is DENIED.

7. To the extent Packer Defendants' Motion seeks judgment on the pleadings as to Plaintiff's claim for civil conspiracy against Packer Defendants, Packer Defendants' Motion is DENIED.

8. To the extent Packer Defendants' Motion seeks judgment on the pleadings as to Plaintiff's claim for dissolution and accounting, Packer Defendants' Motion is GRANTED, and the claim is dismissed.

9. To the extent Packer Defendants' Motion seeks judgment on the pleadings as to Plaintiff's claims for constructive trust and equitable lien, Packer Defendants' Motion is GRANTED, and the claim is dismissed.

10. To the extent the KIC Motion seeks judgment on the pleadings as to Plaintiff's claims for conversion, unfair and deceptive trade practices, and civil conspiracy, the motion should be DENIED.

11. To the extent the KIC Motion seeks judgment on the pleadings as to Plaintiff's claims for tortious interference and constructive trust, the motions should be GRANTED, and the claims dismissed.

SO ORDERED, this the 22nd day of February, 2021.

/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge for
Complex Business Cases